# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

YASMEEN JASMILLA TAYLOR,

        Defendant-Appellant.

UNPUBLISHED
March 7, 2017

No. 329849
Wayne Circuit Court
LC No. 15-002737-01-FC

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of second-degree murder, MCL 750.317, assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 39 to 55 years' imprisonment for the second-degree murder conviction, 20 to 30 years' imprisonment for the assault with intent to commit murder conviction, and two years' imprisonment for the felony-firearm conviction. Appellant's counsel made an oral motion to hold this case in abeyance pending action by our Supreme Court on this issue.[1] We decline. We affirm in part, and remand for a proportionately review as required by *People v Steanhouse*, 313 Mich App 1, 46-49; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016).

## I. BACKGROUND

This case arises from the death of Marquez Douglas (Douglas), and the assault of Latoya Johnson. Defendant, who testified at trial, offered a defense of alibi and denied being present at

---

[1] Our Supreme Court granted leave to appeal in "*Steanhouse* in Docket No. 152849, and in *Masroor* in Docket Nos. 152946–8" with the parties in each case directed to address (1) whether MCL 769.34(2) and (3) remain in full force and effect where the defendant's guidelines range is not dependent on judicial fact-finding, see MCL 8.5; (2) whether the prosecutor's application asks this Court in effect to overrule the remedy in *People v. Lockridge*, 498 Mich. 358, 391, 870 N.W.2d 502 (2015), and, if so, how stare decisis should affect this Court's analysis; (3) whether it is proper to remand a case to the circuit court for consideration under Part VI of this Court's opinion in *People v. Lockridge* where the trial court exceeded the defendant's guidelines range; and, (4) what standard applies to appellate review of sentences following the decision in *People v. Lockridge*." *People v Steanhouse*, 499 Mich 934; 879 NW2d 252 (2016).

the crime scene or in the state on the day of the offense. In contrast, the prosecution presented the testimony of Johnson. Johnson testified that on February 13, 2015, she, her children, brother Milton, and the decedent lived at the house of Alicia Johnson, her mother, located at Teppert street, in Detroit. She testified that Douglas returned home around 5:50 a.m. accompanied by defendant whom she had seen previously. Johnson overheard conversational exchanges between defendant and Douglas both of whom were in Douglas's bedroom. At some point, the conversation and laughter were replaced by about 15 minutes of silence that ended with a single gunshot. As she was seeking cover, Johnson heard approximately five more gunshots. Minutes later, defendant entered the room where Johnson was hiding, and despite her pleading shot her. Johnson called 911, and she then went to the living room. She saw Douglas on the floor of the living room. Douglas had a pulse, but he was not responsive. She testified that Douglas "was shot above the chest on his left side and on his stomach on his left side." When the police arrived, Johnson gave them a statement. Eventually, defendant was apprehended in Huntington, West Virginia

Defendant's trial began on September 14, 2015. During voir dire, defense counsel exhausted his twelve preemptory challenges. Subsequently, voir dire was conducted on juror H, who stated that she had just started a new job as a medical assistant. According to juror H, she was scheduled to begin work on that day. When asked if she would be totally focused on the trial, juror H responded, "[h]onestly, I'm thinking about my new job." Similarly, when asked if she would be able to devote her full attention to the trial, she responded, "[n]ot really." Defense counsel moved that juror H be removed for cause, "because she wouldn't be able to - -[.]" The trial court interjected and denied defense counsel's challenge for cause. In response, defense counsel stated, "[w]e would object."

The jury ultimately found defendant guilty of second-degree murder, assault with intent to commit murder, and felony-firearm. Defendant's sentencing information report (SIR) recommended a sentencing guidelines minimum range of 225 to 375 months' imprisonment or life. During sentencing, the trial court stated, "[t]his was a cold blooded killing. So I don't believe that the guideline minimum range fully reflects the brutality and heartlessness of [defendant's] attack on Mr. Douglas and Ms. Johnson." The trial court noted that defendant shot Douglas multiple times, and that after Johnson pleaded for her life defendant shot at her. The trial court also noted the "excessively violent nature of [defendant's] fatal assault on Mr. Douglas and her cold-blooded firing of a gun at Ms. Johnson's head, as well as the evidence presented at trial, which clearly established her guilt[.]"

In sentencing defendant, the trial court referenced the Michigan Supreme Court's holding in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), noting that a sentence that departs from the sentencing guidelines will be reviewed for reasonableness. The trial also court noted that it was required to justify the sentence it imposed in order to facilitate appellate review. It then stated, "I think in this case given the testimony educed at trial and the reasons set forth in the sentencing memorandum, which both counsel have, I believe an upward departure from the guidelines is warranted in this case."

## II. THE CHALLENGE FOR CAUSE

On appeal, defendant first argues that the trial court abused its discretion when it did not dismiss juror H for cause, because juror H's statements indicated that she had a state of mind that prevented her from rendering a just verdict. We disagree.

This Court reviews a trial court's ruling on whether to excuse a juror for cause for an abuse of discretion. *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000), citing *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986). "An abuse of discretion will be found only if the trial court's decision falls outside the range of principled outcomes." *People v Blevins*, 314 Mich App 339, 361; 886 NW2d 456 (2016), citing *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008).

"[A] criminal defendant has a constitutional right to be tried by an impartial jury[.]" *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008), citing US Const, Am VI; and Const 1963, art 1, § 20. Under MCR 6.412(D), a prospective juror may be challenged for cause. MCR 6.412(D) provides:

**(D) Challenges for Cause.**

(1) *Grounds.* A prospective juror is subject to challenge for cause on any ground set forth in MCR 2.511(D) or for any other reason recognized by law.

(2) *Procedure.* If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel.

Under MCR 2.511(D)(3), a party can challenge a juror for cause if the juror "*shows a state of mind that will prevent the person from rendering a just verdict*, or has formed a positive opinion on the facts of the case or on what the outcome should be[.]" (Emphasis added.) "Although, as a general matter, the determination whether to excuse a prospective juror for cause is within the trial court's discretion, once a party shows that a prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror, who must be excused for cause." *People v Eccles*, 260 Mich App 379, 382-383; 677 NW2d 76 (2004).

"Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001), citing *People v Collins*, 166 Mich 4, 9; 131 NW 78 (1911), and *People v Walker*, 162 Mich App 60, 63; 412 NW2d 244 (1987). This Court has stated, "the fact that the jurors would rather not serve on the jury did not establish a ground for their dismissal." *People v Vaughn*, 291 Mich App 183, 193; 804 NW2d 764 (2010), vacated in part on other grounds by 491 Mich 642 (2012). Further, "[t]his Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522, citing *Butler v Detroit Auto Inter-Ins Exch*, 121 Mich App 727, 746; 329 NW2d 781 (1982).

The trial court did not abuse its discretion when it denied defense counsel's challenge for cause against juror H. During voir dire, juror H indicated that she was scheduled to begin a new job on that day, that she would be thinking about her new job, and that she would "[n]ot really"

be able to devote her full attention to the trial. However, juror H did not demonstrate any bias or an inability to impartially weigh testimony. When juror H was questioned by the trial court, she said that she would give a police officer's testimony that same weight as any other witness, despite the fact that her uncle worked for a "gang squad." Juror H also stated that she would be able to put aside any feelings of sympathy, and that she would be able to keep an open mind.

The trial court was in the best position to assess whether juror H would be impartial. Thus, considering juror H's equivocal statements about her ability to focus on the trial, as well as her clear statements that indicated she would be an unbiased and impartial juror, the trial court's denial of defense counsel's challenge for cause was not outside the range of principled outcomes. Juror H's stated lack of focus, and her seeming desire to not serve on the jury, was not a ground for her dismissal for cause.

On appeal, defendant contends that juror H's state of mind prevented her from rendering a just verdict. In support of her contention, defendant relies on *People v DeFreitas*, 116 AD3d 1078, 1080; 984 NYS2d 423 (2014), a nonbinding extra-jurisdictional authority. In *DeFreitas*, the Appellate Division of the New York Supreme Court noted that, in the context of a challenge for cause, dismissal of a juror who expressed concerns about her employment responsibilities would only be warranted if "the juror indicates that he or she would be distracted or preoccupied to the extent that it would preclude him or her from deliberating in a fair and impartial manner." *Id*. (citations omitted). Ultimately, the Appellate Division held that the trial court did not abuse its discretion when it failed to discharge that juror because that juror's responses did not "in any way intimat[e] that she would be incapable of rendering an impartial verdict." *Id*. at 1080-1081 (citations omitted).

Disregarding the nonbinding nature of defendant's supporting authority, defendant's contention is without merit. The extra-jurisdictional authority relied on by defendant wholly comports with *Williams*, 241 Mich App at 519, as the key inquiry is whether the juror is capable of rendering an impartial verdict. Further, defendant concludes without explication that juror H's state of mind prevented her from rendering a just verdict, and that there was a real likelihood that her distraction affected her vote. Therefore, defendant has failed to carry her burden to demonstrate that juror H was either biased or incompetent.

III. SENTENCING

Defendant's second argument on appeal is that the trial court imposed an unreasonable sentence when it departed upward from her recommended minimum sentencing guidelines range. This Court reviews a departure sentence imposed by a trial court for reasonableness. *Lockridge*, 498 Mich at 392. Whether a sentence is reasonable is determined by applying the principle of proportionality found in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51, 811 NW2d 47 (2011). *Steanhouse*, 313 Mich App at 46-47. Under *Milbourn*, " 'a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 45, quoting *Milbourn*, 435 Mich at 651 (alteration in original).

In *Lockridge,* the Michigan Supreme Court held that Michigan's mandatory sentencing guidelines were "constitutionally deficient," and therefore, "sever[ed]" MCL 769.34(2) to the extent necessary to render the sentencing guidelines "advisory." *Lockridge*, 498 Mich at 364, 391, 399. Further, the Michigan Supreme Court held that a sentence that departed from the now advisory sentencing guidelines should be reviewed for "reasonableness." *Id.* at 365, citing *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

This Court held in *Steanhouse* that a sentence is reasonable if it "fulfills the principle of proportionality under *Milbourn*, and its progeny[.]" *Steanhouse*, 313 Mich App at 47-48. Under *Milbourn*, trials courts were "required to impose a sentence that took 'into account the nature of the offense and the background of the offender.' " *Id*. at 45, quoting *Milbourn*, 435 Mich at 651. *Milbourn* also offered additional guidance for the review of a departure sentence:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. [*Steanhouse*, 313 Mich App at 45-46, quoting *Milbourn*, 435 Mich at 659-660 (quotation marks omitted).]

Additionally, *Steanhouse* provided factors that were considered under the principle of proportionality, and these factors included: "(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Steanhouse*, 313 Mich App at 46 (citations omitted).

Defendant's recommended sentencing guidelines range was 225 to 375 months or life. Ultimately, the trial court departed upward, and sentenced defendant to a minimum sentence of 39 years' (468 months') imprisonment for her second-degree murder conviction. The trial court sentenced defendant on October 1, 2015, which was after the Michigan Supreme Court decided *Lockridge*, and prior to this Court's decision in *Steanhouse*. Thus, during sentencing the trial court acknowledged that, under *Lockridge*, a departure sentence would be reviewed for reasonableness, and therefore, it provided its reasons for the upward departure on the record. The trial court also issued a sentencing memorandum that stated its reasons for departing upward. The trial court justified its upward departure by noting "the excessively violent nature" of defendant's attack on Douglas, defendant's "coldblooded firing of a gun" at Johnson's head, and "the evidence presented at trial that clearly established" defendant's guilt. As this Court had not yet decided *Steanhouse*, the trial court did not specifically address whether its sentence also satisfied the principle of proportionality.

In *Steanhouse*, this Court required that implementation of the principle of proportionality required remand for consideration of a sentence's proportionality pursuant to *Milbourn*, utilizing

the remand procedure adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Steanhouse*, 313 Mich App at 48. Subsequently, this Court has held that a "trial court must be permitted to reconsider defendant's sentence in the light of *Milbourn*," where the defendant was sentenced prior to *Steanhouse* and *Lockridge*. *People v Heller*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 326821); slip op at 2. Similarly, this Court has required a *Crosby* remand even where a trial court went "went to great lengths to support its sentencing decision," because the trial court did not specifically consider whether the sentence imposed was " 'proportionate to the seriousness of the circumstances of the offense and the offender.' " *People v Stevens*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328097); slip op at 3 quoting *Milbourn*, 435 Mich at 636.

Thus, despite the trial court's extensive explanation for its upward departure, a remand to the trial court is necessary for the trial court to consider the principle of proportionality. As defendant is entitled to a *Crosby* remand, we need not reach her arguments concerning the unreasonableness of her sentence.

Affirmed in part, and remanded for further sentencing proceedings consistent with *Lockridge*, *Steanhouse*, and *Crosby*. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro